UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LYNETTE ROBINSON,

                Plaintiff,

      -against-                               08 Civ. 1724 (LAK)

AMERICAN INTERNATIONAL GROUP, INC., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

              Vincent I. Eke-Nweke
              LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.
              *Attorney for Plaintiff*

              Patricia A. Cullen
              Michael J. Sheehan
              DRINKER BIDDLE & REATH LLP
              *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Lynette Robinson brings various claims against defendants American International Group ("AIG"), its employees, Anthony DeStefano and Matthew Frankel, and its subsidiary, American Home Assurance Company ("American Home").  Plaintiff alleges that defendants violated ERISA, discriminated against her on the basis of race and disability, and retaliated against her for requesting an accommodation for her alleged disability.  Defendants move for summary judgment dismissing the complaint.

*Background*

A.    *Plaintiff's Employment with American Home*

American Home is a subsidiary of AIG in what formerly was known as AIG's domestic brokerage group.  In June 1990, plaintiff began working at American Home as a temporary employee and was hired full-time in December 1995.[1]  In February 1998, plaintiff became marketing assistant to Christopher Maleno, an executive at American Home, and was promoted to executive assistant in July 1999.[2]  She continued in that position until 2006, when Maleno, then the executive vice president and chief operating officer of excess casualty who reported directly to American Home's president, John Doyle, resigned.[3]   In January 2007, Tim McAuliffe became the new president of excess casualty and also reported directly to Doyle.[4]  Although plaintiff contends that

---

[1]    Def. Rule 56.1 St. ¶ 1-2.

[2]    *Id.* at ¶ 3-4.

[3]    *Id.* at  ¶ 6-7.

[4]    *Id.* at  ¶ 8.

2

she was chosen to be McAuliffe's executive assistant in December 2006,[5] it is undisputed that McAuliffe chose LoPinto as his executive assistant in 2007.[6]  Plaintiff subsequently was assigned to work as the executive assistant to Matthew Frankel, president of American Home's warranty division, who reported directly to Doyle.[7]

B.    *The Reception Desk and Plaintiff's Disability*

From time to time, American Home asked executive assistants—including plaintiff—to cover a reception desk when the receptionist was unavailable.[8]  This involved, among other things, answering phone calls.

In 2005, Kevin McDermott, American Home's senior vice president of operations, asked plaintiff to cover the reception desk.[9]  Plaintiff informed McDemott that she could not do so because, *inter alia*, she had a "hearing loss problem."[10]  Thereafter, she spoke with Mahony in human resources, who asked her for a doctor's note documenting her condition.[11]  On December 1,

---

[5]    Pl. Rule 56.1 St. ¶ 10.

[6]    Def. Rule 56.1 St. ¶ 10.

[7]    *Id.* at  ¶¶ 11-12.

[8]    *Id.* at ¶ 29.

[9]    *Id.* at  ¶ 30.

[10]    *Id.* at  ¶ 32.

[11]    *Id.* at  ¶ 32-33.

2005, plaintiff provided Mahony a note from Dr. Dione Williams, which stated that plaintiff was "[r]eceiving a work-up for hearing loss and disequilibrium abnormality."[12]  Mahoney discussed the issue with Maleno, and plaintiff was not required to work at the reception desk.[13]

Plaintiff again was asked to cover the reception desk in 2006.[14]  She again objected and again was asked for a doctor's note.[15]  This time, however, she failed to provide one.[16]

In March 2007, Mahony and Frankel asked plaintiff why she could not work at the reception desk.[17]  Plaintiff then produced another note from Dr. Williams,[18] which stated that "[t]his patient is unable to meet the additional needs for 2 hour intervals for reception duties or bending talking [sic] with ear down on phone due to (1) disequilibrium [and] (2) Labyrinthine dysfunction."[19]  Dr. Williams made a notation also on a copy of plaintiff's job description indicating that plaintiff had an "appointment for testing on July 21st."[20]  This information was forwarded to Jane Dillon, a

---

[12]

    *Id.* at ¶ 33-34.

[13]

    *Id.* at ¶ 35.

[14]

    *Id.* at ¶ 36.

[15]

    *Id.* at ¶ 37.

[16]

    *Id.*

[17]

    *Id.* at ¶ 38.

[18]

    *Id.* at ¶ 40.

[19]

    *Id.*

[20]

    *Id.*

4

registered nurse and the manager of health care reviewers, an arm of the human resources department that evaluated requests for workplace accommodations.[21]

Over the next months, Dillon arranged to have three ear, nose and throat specialists—Drs. David J. Sand, John R. Bogdasarian, and Michael S. Goldrich—review the information, talk to Dr. Williams, and determine whether plaintiff was medically unable to perform any of the receptionist desk tasks.[22]  Each reviewed the medical information but none was able to speak with Dr. Williams.[23]  Each concluded that plaintiff was medically able to cover the reception desk.[24]  Plaintiff disputed these conclusions.[25]  American Home then provided plaintiff with a "job duty grid" which she provided to Dr. Williams.[26]  On the grid, Dr. Williams indicated that plaintiff was unable to answer telephone calls for two-hour intervals at the reception desk because of "moderate hearing loss associated with labyrinthine dysfunction – bilateral" and attached paperwork supporting her diagnosis.[27]

---

[21]

*Id.* at ¶ 41.

[22]

*Id.* at ¶¶ 42, 45, 48.

[23]

*Id.* at ¶¶ 42-43, 46-47, 48-49.

[24]

*Id.* at ¶¶ 43, 47, 49.

[25]

*Id.* at ¶ 50.

[26]

*Id.* at ¶ 51.

[27]

*Id.* at ¶ 53.

5

C.      *Plaintiff's 2007 Life Insurance Inquiries and Performance Review*

While employed at American Home, plaintiff purchased a supplemental group life insurance policy that provided coverage equal to twice her salary.[28]  When plaintiff turned 60 in January 2007, her premiums increased.[29]  She inquired about her policy and, among other things, requested that her premiums be "rolled over" into a personal account.[30]  After learning that her premiums did not accrue in a personal account from which she could withdraw, she reduced the amount of her supplemental coverage.[31]  This change was not processed correctly, resulting in plaintiff being charged higher premiums and being asked for proof of insurability.[32]  Plaintiff was refunded $80.38 but claims she may be entitled to more.[33]

In July 2007, Matthew Frankel delivered plaintiff's performance evaluation.[34] Frankel did not believe that he could accurately assess plaintiff's performance for the entire review period because plaintiff had worked for him for only part of that time.[35]  He nevertheless gave her

---

[28]
      *Id.* at ¶ 20.

[29]
      *Id.* at ¶ 21.

[30]
      *Id.* at ¶¶ 22-23.

[31]
      *Id.* at ¶¶ 23-24.

[32]
      *Id.* at ¶¶ 25-26.

[33]
      *Id.* at ¶ 26; Pl. Rule 56.1 St. ¶ 26.  This claim is not a part of this lawsuit.

[34]
      Def. Rule 56.1 St. ¶ 16.

[35]
      *Id.* at ¶ 17.

6

a "3," signifying that plaintiff's "[a]ccomplishments meet and sometimes exceed target performance."[36]  He approved a raise of $2,000, or 2.96 percent, the same dollar amount, but not the same percentage increase, as plaintiff's prior merit increase.[37]

### D.    Plaintiff's Termination

On October 9, 2007, Anthony DeStefano, the manager of human resources, informed plaintiff that she would need to help cover the reception desk from time to time.[38]  On November 15, 2007, plaintiff was asked to cover the reception desk from 9 a.m. until 11 a.m.[39]  She replied via email: "I will not be covering the reception the [sic] Reception Desk."[40]  The next day, she met with DeStefano and human resources supervisor Jamie Zinn.  Plaintiff was told repeatedly that she would have to cover the reception desk.[41]  She refused to do so.[42]  On November 16, 2007, American Home terminated her for refusing to cover the reception desk.[43]

---

[36]    Def. Rule 56.1 St. ¶ 18; Def. Br. Ex. D.

[37]    Def. Rule 56.1 St. ¶¶ 18-19.

[38]    *Id.* at ¶ 56.

[39]    *Id.* at ¶ 57.

[40]    *Id.* at ¶ 58.

[41]    *Id.* at ¶ 59.

[42]    *Id.* at ¶ 59.

[43]    *Id.* at ¶ 60.

*Discussion*

A.      *Legal Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[44]  The Court must view the facts in the light most favorable to the nonmoving party,[45] and the moving party has the burden of demonstrating the absence of a genuine issue of material fact.[46]  Where the burden of proof at trial would fall on the nonmoving party, however, it ordinarily is sufficient for the movant to point to a lack of evidence on an essential element of the nonmovant's claim.[47]  In that event, the nonmoving party must come forward with admissible evidence[48] sufficient to raise a genuine issue of fact for trial or suffer an adverse judgment.[49]

---

[44]  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000).

[45]  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

[46]  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

[47]  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

[48]  *See, e.g.*, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001).

[49]  *See, e.g.*, *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

8

B.    *Plaintiff's Claims*

Plaintiff asserts four causes of action: (1) retaliation in violation of ERISA (2) discrimination based on race in violation of Title VII, the New York State Human Rights Law ("NYSHRL") and the Administrative Code of New York City ("NYCHRL") (3) discrimination based on disability in violation of the Americans With Disabilities Act ("ADA"), and (4) retaliation for a request for accommodation under the ADA.  Each of the claims is evaluated under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*.[50]

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination.[51]  Once the plaintiff has made out a *prima facie* case, the burden then shifts to defendants to offer a legitimate, nondiscriminatory reason for the action.[52]  The burden then shifts back to plaintiffs "prove that the defendants intentionally discriminated against them on a prohibited ground."[53]  To defeat summary judgment, the "plaintiff must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's . . . race was the real reason for the discharge."[54]

---

[50]    411 U.S. 792, 802-05 (1973); *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002).

[51]    *McDonnell Douglas*, 411 U.S. at 802; *City of Middletown*, 294 F.3d at 49.

[52]    *McDonnell Douglas*, 411 U.S. at 802; *City of Middletown*, 294 F.3d at 49.

[53]    *City of Middletown*, 294 F.3d at 49; *McDonnell Douglas*, 411 U.S. at 804.

[54]    *Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 132 (2d Cir. 1996).

9

### 1.    ERISA Retaliation Claim

Plaintiff's first cause of action alleges that she was terminated in retaliation for inquiries about her supplemental life insurance plan in violation of ERISA.[55]

In order to make out a *prima facie* case of retaliation under ERISA, plaintiff must show that (1) she engaged in a protected activity, (2) defendants were aware of that activity, (3) plaintiff suffered from an adverse employment decision, and (4) there was a causal connection between the protected activity and the adverse employment action.[56]  Furthermore, plaintiff must offer evidence showing that defendants had the specific intent to retaliate against her.[57]

Plaintiff has not made out a *prima facie* claim.  While she claims she "was engaged in a lot of protected activities close to the time of her termination,"[58] she has pointed to no evidence showing the timing of any specific protected activities or describing their substance.  The only arguably protected activity plaintiff describes are her "requests and inquiries" about her ability to "roll over" her insurance—actually, to take the amount of the premiums in lieu of the coverage—

---

[55]     "ERISA § 510 provides that it is illegal to 'discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of [such rights] . . . .'"  *Giordano v. Thomson*, 564 F.3d 163, 169 (2d Cir. 2009) (quoting 29 U.S.C. § 1140).

[56]     *Id.*

[57]     *Id.*

[58]     Pl. Br. 22.

10

and what would happen to it if she retired.[59]  Even assuming that such actions were "protected

activity"under ERISA—and it is not clear that they are[60]—plaintiff has not provided a single specific

instance of such an inquiry after January 2007—10 months before she was fired.

Further, even assuming that plaintiff had engaged in "protected activity," she has

pointed to no evidence of a causal relationship between her termination for insubordination and her

inquiries.  Defendants contend that plaintiff was terminated because of her refusal to cover the

reception desk.[61]  Plaintiff does not dispute this.[62]  Nor has she pointed to any admissible evidence

from which a reasonable jury could find that she was terminated for her "requests and inquires" or

any other reason related to her ERISA benefits.  As a result, summary judgment in favor of

defendants on this claim is appropriate.


2.      *Racial Discrimination*

The amended complaint alleges several theories of discrimination based on race in

---

[59]

Am. Compl. ¶ 46.

[60]

A "formal, external inquiry" is not necessary for actions to qualify as "protected activity" under ERISA § 510.  *Nicoulau v. Horizon Media, Inc.*, 402 F.3d 325, 330 (2d Cir. 2005). However, it is not clear that an individual "inquiring" about the specifics of her supplemental life insurance policy is analogous to the "protected activity" recognized in *Nicoulau* as plaintiff suggests. *Id.* at 330.  In that case, plaintiff was fired after helping to initiate and participating in an internal investigation about the chronic under-funding of her employer's 401(k) plan.  *Id.* at 326-28.  Here, plaintiff is merely inquiring about the status of her own benefits.

[61]

Def. Rule 56.1 St. ¶ 60 ("Robinson was terminated on November 16, 2007 because of her refusal to cover the reception desk.").

[62]

Pl. Rule 56.1 St. ¶ 60.

alleged violation of Title VII, the NYSHRL and the NYCHRL.[63]  Defendant moves for summary

judgment dismissing these claims on several grounds.

Plaintiff has failed to address defendants' arguments against or even mention several

of the claims of racial discrimination.[64]    She therefore has abandoned these claims.[65]   The

*McDonnell Douglas* burden-shifting framework governs the remaining claims: disparate treatment

with regard to pay and job assignments.

---

[63]

As plaintiff acknowledges, in the Second Circuit Title VII, NYHRL, and NYCHRL
discrimination claims are typically treated as analytically identical and have the same
standard of proof.  *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir.
2008); *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Torres v. Pisano*,
116 F.3d 625, 629 n.1 (2d Cir. 1997); *see Matter of Miller Brewing Co. v. State Div. of
Human Rights*, 66 N.Y.2d 937, 938, 498 N.Y.S.2d 776, 777 (1985); *Landwehr v. Grey
Adver. Inc.*, 211 A.D.2d 583, 583, 622 N.Y.S. 2d 17, 18 (1st Dep't 1995).

[64]

These abandoned claims are for racial discrimination based on theories of disparate impact,
pattern or practice, disparate treatment with regard to the 2007 performance appraisal, and
disparate treatment with regard to American Home's refusal to alter its policy of
establishing service dates.

[65]

*See, e.g.*, *Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614 (WHP), 2006 WL
465374, at *7 (S.D.N.Y. Feb. 28, 2006) (claim abandoned by plaintiff's failure to address
it in opposition to defendant's summary judgment motion) (citing *Douglas v. Victor Capital
Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)); *DeVito v. Barrant*, No. 03 Civ. 1927
(DLI), 2005 WL 2033722, at *10 (E.D.N.Y. Aug. 23, 2005); *Taylor v. City of New York*,
269 F. Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when
a party moves for summary judgment on one ground and the party opposing summary
judgment fails to address the argument in any way."); *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel.
& Tel. Co.*, No. 92 Civ. 1735 (LAP), 1998 WL 118174, at *28 (S.D.N.Y. Mar. 16, 1998)
(where plaintiff did not address claim in response to defendant's summary judgment motion,
claim deemed "abandoned" and defendant granted summary judgment); *Anti-Monopoly,
Inc., v. Hasbro, Inc.*, 958 F.Supp. 895, 907 & n.11 (S.D.N.Y.) ("failure to provide argument
on a point at issue constitutes abandonment of the issue"), *aff'd*, 130 F.3d 1101 (2d
Cir.1997); *cert. denied, Anti-Monopoly, Inc. v. Hasbro, Inc.*, 525 U.S. 813.  *See also*
S.D.N.Y. CIV. R. 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of
law, setting forth the points and authorities relied upon . . . in opposition to the motion . . .
. Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting
of a motion by default.").

a.      *Disparate Treatment: Pay*

In order to make out a *prima facie* case of unequal pay for equal work on the basis of race, plaintiff must adduce evidence tending to show that she (1) is a member of a protected class and (2) was paid less than non-members of the protected class for work requiring substantially the same responsibility.[66]  She must also "produce evidence of discriminatory animus of race-based salary discrimination.  In meeting this burden a plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated. Comparators must be "similarly situated all material respects."[67]

Plaintiff concedes that she was the highest paid assistant working for an American Home executive who reported directly to Doyle, American Home's president.[68]  She argues, however, that her comparators are not the executive assistants to American Home executives reporting to the company president but, rather, the nine executive assistants in the "home office" who worked for other AIG subsidiaries within the AIG domestic brokerage group.[69]

These are not appropriate comparators.[70]  There is no evidence that any of these

---

[66]     *White v. Fuji Photo Film USA, Inc.*, 434 F. Supp 2d 144, 153-54 (2d Cir. 2006) (citing *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999)).

[67]     *Id.* (internal citations omitted).

[68]     Def. Rule 56.1 St. ¶ 13.

[69]     Pl. Br. 20; Eke-Nweke Decl. Ex. 18 at ¶ 13-18.

[70]     *White*, 434 F. Supp. 2d at 154 (holding that employees with different titles, whose job functions differ in certain respects from plaintiff's, and who had previously had different titles were not appropriate comparators).

individuals ever worked for American Home.  Five of the comparators had job titles different from executive assistant.[71]  Furthermore, there is no evidence that plaintiff's salary was determined by the same people who set the salaries of her expanded comparable group, rendering any comparison baseless.

Furthermore, and importantly, plaintiff's claim would fail even if these were appropriate comparators because she has provided no evidence of discriminatory intent.[72]  Evidence showing variations in pay among employees of different races is not sufficient to survive summary judgment.  Plaintiff must still put forth "adequate evidence to support a rational finding that . . . the employee's . . . race" was the reason for the disparity.[73]  Plaintiff has pointed to no evidence of discriminatory animus.   Summary judgment dismissing these claims therefore is appropriate.

b.      *Disparate Treatment: Job Assignment*

To make out a claim for disparate treatment on the basis of race based on her job assignment, plaintiff must show that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applications; (3) she suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of

---

[71]

Eke-Nweke Decl. Exs. 4 & 5.

[72]

*See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (noting that plaintiff must show intentional discrimination); *Belfi*, 191 F.3d at 140 (noting that plaintiff must prove intent to discriminate to succeed on Title VII claim).

[73]

*Holt*, 95 F.3d at 132; *McPherson v. NYP Holdings, Inc.*, 227 Fed. Appx. 51 (2d Cir. 2007) (affirming grant of summary judgment for defendant where there was no evidence of discrimination); *see James v. New York Racing Ass'n*, 233 F.3d 149, 155-56 (2d Cir. 2000).

14

discrimination."[74]  Plaintiff cannot survive summary judgment on this claim because there is no

evidence that she suffered an adverse employment action or of discrimination.

Plaintiff sustained an "adverse employment action" if she "endure[d] a materially

adverse change in the terms and conditions of employment."[75]  A material adverse change need not

consist of "job termination or reduced wages and benefits," but "not every unpleasant matter . . .

creates a cause of action for retaliatory discharge."[76]  The adverse change must be established by

"objective indicia."[77]

Plaintiff claims that her assignment to be executive assistant to Matthew Frankel,

then-president of American Home's warranty division, rather than to Tim McAuliffe, then-president

of American Home's excess casualty division, was an "adverse employment action."

It is undisputed that when plaintiff began her job with Frankel, her title and pay

remained the same.[78]  It is undisputed also that Frankel, like McAuliffe, reported directly to John

Doyle, American Home's president.[79]  Despite this, plaintiff contends that her assignment was an

"adverse employment action" because her responsibilities while assigned to Frankel were "materially

---

[74]

*Williams v. R. H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004).

[75]

*Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (internal quotation marks omitted).

[76]

*Id.*

[77]

*Beyer v. County of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008).

[78]

Def. Rule 56.1 St. ¶ 12.

[79]

*Id.*

less prestigious, less suited to the skills she had and were less conducive to career advancement" because Frankel had not had an assistant for at least five years and because she received a smaller raise in 2007 than did McAuliffe's executive assistant.[80]

None of these contentions supports her argument.  Plaintiff offers no evidence that her assignment to Frankel was less prestigious, and her personal beliefs to the contrary are insufficient to create a genuine issue of material fact.[81]  Likewise, plaintiff points to no evidence supporting her claim that she would have received a larger raise in 2007 had she worked for McAuliffe instead of Frankel.  Nor could she.  Any estimate of the hypothetical raise she would have received had she worked for McAuliffe would be speculation and would not create a genuine issue of material fact sufficient to defeat summary judgment.[82]

Even assuming plaintiff could show that she suffered adverse employment action, she has offered no evidence that her assignment to Frankel instead of McAuliffe was affected by race. Instead, it is undisputed that both plaintiff and Gail LoPinto worked for Christopher Maleno.[83]  It is undisputed also that LoPinto was qualified to serve as executive assistant to McAuliffe and that she

---

[80]

Pl. Br. 18.

[81]

See *Beyer*, 524 F.3d at 164 ("[W]e require objective indicia that the transfer denial "created a materially significant disadvantage" in the working conditions of the aggrieved employee."); *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (requiring objective indicia).

[82]

See *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").

[83]

Def. Rule 56.1 St. ¶ 6.

16

had experience dealing with brokers, an important attribute of McAuliffe's business.[84]  Finally, it is

undisputed that McAuliffe in 2007 chose LoPinto to be his executive assistant.[85]   Plaintiff has

pointed to no evidence suggesting that McAuliffe's choice, here between two qualified candidates,

was affected by racial animus.    Plaintiff therefore has not satisfied step three of the *McDonnell*

*Douglas* framework, and summary judgment is appropriate.[86]


>        3.        *Disability Discrimination Claims*

>              a.        *Retaliatory Termination*

In the amended complaint, plaintiff claims that she was terminated in retaliation for

the exercise of her rights under the ADA.   Like the racial discrimination claims, this claim is

governed by the *McDonnell Douglas* burden shifting framework.[87]

Plaintiff concedes that she was fired because of her refusal to cover the reception desk

in the face of a direct instruction to do so.[88]   Plaintiff has pointed to no evidence showing that this

explanation was a pretext for discrimination.  Nor has she adduced any evidence of discriminatory

---

[84]

> *Id.* at ¶ 9.

[85]

> *Id.* at ¶ 10.

[86]

> *See Holt*, 95 F.3d at 134 (granting summary judgment for defendants on Title VII discrimination claims where plaintiff did not identify "any evidence which would demonstrate that defendant's proffered reasons are pretextual.").

[87]

> *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 181 F.3d 155, 159 (2d Cir. 1999).

[88]

> Def. Rule 56.1 St. ¶¶ 56, 60.

17

animus.[89]  In any event, plaintiff failed to address defendants' arguments regarding this claim and therefore has abandoned it.

          *b.*      *Reasonable Accommodation Claim*

        Plaintiff's primary ADA claim is that defendants failed to make reasonable accommodation for her disability by asking her intermittently to cover the reception desk for two hours at a time.  Defendants claim that summary judgment dismissing this claim should be granted because plaintiff failed to provide sufficient medical documentation for her requested accommodation, failed to show that the requested accommodation related to plaintiff's medical condition, and that American Home made reasonable efforts to accommodate plaintiff based on the information it had.[90]  These three arguments can be consolidated into one: plaintiff failed to provide sufficient information to defendants about her disability, its effects on her work, and any reasonable accommodations that would be necessary.

        The ADA prohibits an employer from discriminating against an employee "because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and

---

[89]

        *Kemp v. Metro-North R.R.*, 316 Fed Appx. 25, 27 (2d Cir. 2009) (affirming grant of summary judgment for defendant in ADA retaliation claim where plaintiff "made no showing" that defendant's explanation for employment action was pretext for retaliation).

[90]

        Reply Br. 19-21.

18

privileges of employment."[91]   The statute defines discrimination as, *inter alia*, "not making

reasonable accommodations to the known physical or mental limitations of an otherwise qualified

individual with a disability . . . ."[92]   To make out such a claim, a plaintiff must establish that "(1) that

[she] is an individual who has a disability within the meaning of the statute, (2) that an employer

covered by the statue had notice of [her] disability, (3) that with reasonable accommodation, [she]

could perform the essential functions of the position sought, and (4) that the employer has refused

to make such accommodations."[93]   Furthermore, the plaintiff bears the burden of proving the

existence of a reasonable accommodation.[94]   The statutory scheme and implementing regulations,

however, contemplate an "interactive process" by which employers and employees work together

to identify the "precise limitations resulting from the disability and potential reasonable

accommodations that could overcome those limitations."[95]

   Even assuming for purposes of this analysis that plaintiff's medical condition

constituted a disability, and further assuming that her proposed accommodation—to be permanently

---

[91]
  42 U.S.C. § 12112(a).

[92]
  42 U.S.C. § 12112(b)(5)(A).

[93]
  *Stone v. City of Mount Vernon*, 118 F.3d 92, 96-97 (2d Cir. 1997); *accord Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001).

[94]
  *Jackan v. United States*, 205 F.3d 562, 566 (2d Cir. 2000); *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 137-38 (2d Cir. 1995).

[95]
  29 C.F.R. § 1630.2(o); *see Jackan v. United States*, 205 F.3d 562, 566 (2d Cir. 2000) (citing *Beck v. Univ. of Wisconsin Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); 29 C.F.R. § 1630.2(o)(3)); *Economou v. Caldera*, No. 99 Civ. 12117 (AJP), 2000 WL 1844773, at *23 (S.D.N.Y. Dec. 18, 2000), *aff'd* 286 F.3d 144, 145 (2d Cir. 2002).

excused from covering the reception desk—would reasonably accommodate her, plaintiff's claim for failure to make a reasonable accommodation can not survive summary judgment. Defendants were not obliged to accede to plaintiff's demand, at least without exploring its reasonableness and the necessity for it.[96] While they were obliged to engage in an interactive process to determine the extent of plaintiff's disability and whether a reasonable accommodation existed, "[l]iability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown" of this interactive process.[97]

Here, the record contains undisputed evidence of defendants' numerous attempts to obtain medical information from plaintiff and plaintiff's failure to provide the information or details reasonably requested. Plaintiff therefore was responsible for the breakdown of the interactive process.

Plaintiff first made a request for accommodation in 2005 and provided a doctor's note stating that she was "receiving a work-up for hearing loss and disequilibrium abnormality."[98] At that time, plaintiff was excused from covering the receptionist desk. In 2006, American Home again

---

[96]

> See, e.g., *Fink v. New York City Dep't of Personnel*, 855 F. Supp. 68, 72 (S.D.N.Y. 1994) (holding under Vocational Rehabilitation Act that "[t]here is no provision requiring the employer to take account of the disabled individual's preferences in choosing the means of accommodation"), *aff'd* 53 F.3d 565 (2d Cir. 1995); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation.").

[97]

> *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 Fed. Appx. 943, 945-45 (2d Cir. 2008); *Beck*, 75 F.3d at 1137 (7th Cir. 1996).

[98]

> Def. Rule 56.1 St. ¶ 33-34.

asked plaintiff for a doctor's note explaining why she could not cover the desk.[99]  Plaintiff did not provide one, but again was not required to cover the desk.[100]  In 2007, plaintiff again was asked for a doctors note explaining her inability to cover the desk.[101]  She provided one containing substantially the same information that was in the 2005 note and still was not required to cover the reception desk.[102]  Subsequently, American Home arranged to have three ear, nose and throat specialists examine plaintiff's medical information.  Each tried unsuccessfully to speak with plaintiff's doctor and each concluded that plaintiff's medical condition did not preclude her from covering the reception desk.[103]  Finally, plaintiff's doctor returned a "job duty grid" that American Home had provided and noted that plaintiff could not cover the reception desk because of "moderate hearing loss associated with labyrinthine dysfunction - bilateral."  This was essentially the same "cursory explanation" that had been provided in the 2005 doctor's note.[104]  During this nearly two-

---

[99]

     *Id.* at ¶ 37.

[100]

     *Id.*

[101]

     *Id.* at ¶ 40.

[102]

     *Id.*("This patient is unable to meet the additional needs of 2 hour intervals for reception duties or bending talking [sic] with ear down on phone due to (1) disequilibrium [and] (2) Labyrinthine dysfunction.").

[103]

     Def. Rule 56.1 St. ¶ 42-43, 46-47, 48-49.

[104]

     It certainly is not self-evidence that moderate hearing loss prevented plaintiff from manning the reception desk and taking telephone calls.

year period, it is undisputed that plaintiff never was required to cover the reception desk.[105]

Plaintiff's failure to provide defendants with information reasonably necessary to determine whether an accommodation was needed and, if so, what would have been reasonable, is similar to the situation in *Economou v. Caldera*,[106] where the Second Circuit affirmed a grant of summary judgment in favor of defendants because the plaintiff was responsible for the breakdown in an interactive process.[107]  Economou worked for the Army Corps of Engineers.  In 1997, he submitted a doctor's note stating that he was "'totally incapacitated' and could not work at all due to medication."[108]  The Army Corps of Engineers requested additional documentation to determine whether Economou's absence was justified.  Instead of providing additional information, Economou "continued to submit requests for sick leave accompanied by notes from [his doctor] with the same cursory explanation" that was in the original doctor's note.[109]

---

[105]

       *Id.* at ¶ 55.  In light of these undisputed facts, it is unnecessary to decide whether an employer's failure to engage adequately in the interactive process is itself a violation of the ADA.  This theory, however, seems dubious.

[106]

       No. 99 Civ. 12117 (AJP), 2000 WL 1844773 (S.D.N.Y. Dec. 18, 2000) (dismissing reasonable accommodation claim because, *inter alia*, plaintiff was responsible for breakdown in interactive process), aff'd 286 F.3d 144 (2d Cir. 2002).

[107]

       *Id.* at *23-24.

[108]

       *Id.*

[109]

       *Id.* at *23.  Plaintiff's attempts to distinguish this case are unavailing.  As in this case, the Army Corps of Engineers asked Economou to provide more specific details from his physician justifying his request for accommodation based on his medical condition.  *Id.* The fact that the Army Corps of Engineers also sent requests directly to Economou's doctor is immaterial.  The ADA and implementing regulations contemplate an interactive process between employer and employee and do not require direct communication between employer and employee's doctor.  *See Jackan v. United States*, 205 F.3d 562, 566 (2d Cir. 2000) (citing *Beck*, 75 F.3d at 1135; 29 C.F.R. § 1630.2(o)(3)).  In any event, in this case,

As in *Economou*, summary judgment on the ADA discrimination claim should be granted in favor of defendants because the undisputed facts show that defendants participated in the interactive process contemplated by the ADA regime, were not responsible for its breakdown, and accommodated the plaintiff during this process by exempting her from reception desk coverage while the process occurred.[110]

### 4.    ADA Retaliation Claims

The amended complaint alleges that defendants violated the ADA by committing four retaliatory acts: (1) requesting that plaintiff substantiate her need for an accommodation (2) giving plaintiff a middle score on her performance evaluation in 2007 (3) refusing to alter plaintiff's service date and (4) processing delays and errors in changing plaintiff's supplemental life insurance coverage.  Plaintiff has abandoned her claims as to the first, third, and fourth of these acts by her silence in the face of defendants' arguments.  Thus, all that remains is her contention that defendants' retaliated against her by evaluating her performance as "3" in 2007.  This claim is meritless.

Plaintiff's ADA retaliation claim is governed by the *McDonnell Dogulas* burden-shifting framework.[111]  To make out a *prima facie* case of retaliation, plaintiff must adduce evidence

---

[110]

American Home did attempt to communicate with plaintiff's doctor.  When American Home finally reached Dr. Williams by sending the "job duty grid," it received the same explanation contained in previous doctor's notes.  Def. Rule 56.1 St. ¶ 53.

*Economou*, 2000 WL 1844773, at *23, aff'd 286 F.3d 144, 145 (2d Cir. 2002); *see also Thompson v. City of New York*, No. 03 Civ. 4182 (JSR)(JCF), 2006 U.S. Dist. LEXIS 59472, at *14 (S.D.N.Y. Aug. 10, 2006) (granting summary judgment for defendant where plaintiff provided no concrete evidence that defendant was responsible for breakdown in interactive process), adopted 2008 U.S. Dist. LEXIS 7488, at *1 (S.D.N.Y. Feb. 1, 2008).

[111]

*Lovejoy-Wilson*, 263 F.3d at 223.

that (1) she was engaged in activity protected by the ADA, (2) her employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action.[112]

Plaintiff has not adduced evidence of an adverse employment action.  While there is no bright-line rule, "District Courts in this Circuit have held that positive evaluations, which are 'not as positive' as previous performance evaluations do not constitute adverse employment actions."[113] This is particularly true where the plaintiff has "provided no specific evidence as to . . . why [the plaintiff] deserved better."[114]  Furthermore, courts in this circuit have also held that "negative evaluations, without accompanying adverse consequences such as demotion, diminution of wages or other tangible loss, are not adverse employment actions."[115]

In her 2007 performance review, plaintiff received an overall score of "3," signifying that plaintiff's "[a]ccomplishments meet and sometimes exceed target performance."[116]  Plaintiff

---

[112]

*Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000); *Sarno*, 183 F.3d at 159.

[113]

*Lanier v. I.B.M. Corp.*, 319 F. Supp. 2d 374, 384-85 (S.D.N.Y. 2004) (citing *Evans v. City of New York*, No. 00 Civ. 4197 (BSJ), 2003 U.S. Dist. LEXIS 18281, *33 (S.D.N.Y. Oct. 9, 2003); *Simmons v. New York City Health & Hosp.*, No. 99 Civ. 3181 (ILG), 2001 U.S. Dist. LEXIS 4640, *21 (E.D.N.Y. Mar. 30, 2001)); *see also Richardson v. New York State Dep't of Corr.*, 180 F.3d 426, 443-44 (2d Cir.1999).

[114]

*Richardson*, 180 F.3d at 443-44 (affirming district court finding in Title VII retaliation case that "average" performance evaluations were insufficient to establish adverse employment action).

[115]

*Ash v. New York State Office of Court Admin.*, No. 00 Civ. 9849 (LMM), 2005 U.S. Dist. LEXIS 1670, *18 (S.D.N.Y. Feb. 2, 2005) (collecting cases).

[116]

Def. Rule 56.1 St. ¶ 18; Def. Br. Ex. D.

contends that this rating was the worst she had received in her 17 years.[117]   However, as a matter of

law, this score did not constitute adverse employment action.  Plaintiff does not dispute that she had

worked for her reviewer, Matthew Frankel, only for a short period of time and that Frankel did not

think he could accurately assess her performance for the entire review period.[118]   Nor does she

dispute that he gave her a neutral score and approved an increase in pay equivalent to plaintiff's most

recent merit increase.[119]   Plaintiff fails also to point to any evidence showing that the performance

review had any negative effect on her or affected her salary, position, title, or prospects in any way.

As a result, the performance review did not constitute an adverse employment action and summary

judgment in favor of defendants is appropriate.

Furthermore, even assuming that plaintiff's 2007 performance review was an adverse

employment action, summary judgment in favor of defendants still would be appropriate because

plaintiff has provided no evidence that Frankel's explanation for her performance evaluation was

pretextual or that retaliation for plaintiff's request for a reasonable accommodation was the real

reason.  Temporal proximity alone, while sometimes sufficient to meet the causation element of the

*prima facie* case at step one of the *McDonnell Douglas* framework[120] is insufficient to discharge the

---

[117]

Pl. Br. 22.

[118]

Def. Rule 56.1 St. ¶ 17.

[119]

*Id.* at ¶ 18.

[120]

*Gorman-Bakos v. Cornell Coop. Ext. Of Schnectady County*, 252 F.3d 545, 554 (2d Cir. 2001).

25

plaintiff's burden at step three.[121]   Therefore, summary judgment should be granted in favor of defendants.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint [DI 29] is granted.


SO ORDERED.

Dated:          September 30, 2009



Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[121]

*Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 614-615 (S.D.N.Y. 2008) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240-41 (10th Cir. 2004); *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 820 n.5 (8th Cir.1998); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997); *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 410 (S.D.N.Y. 2007); *Pellegrino v. County of Orange*, 313 F. Supp. 2d 303, 316-17 (S.D.N.Y. 2004); *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 210 (D. Conn. 2000)).